JOHN ARMSTRONG

*v.*

JOSEPH WILLIAM GRIFFIN and KATHRYN MULLER.

[Submitted May 25th, 1914. Decided May 27th, 1914.]

A deed contained the restrictions: "That the party of the second part, their heirs and assigns, shall not at any time previous to September 1st, 1903, erect, &c., nor cause any building other than a store or dwelling having a stone or brick foundation, and having at least two stories above such foundation, which building shall not be used for any other purpose than as a store or dwelling within the time limited; that no building shall be erected nearer than five feet to the street line of West Side avenue. No two-story clothes poles shall be erected on the said property. It is expressly agreed that no wines, beers nor liquors of any kind shall be sold or manufactured upon the said premises." Upon a bill to restrain the leasing or using or permitting to be used said premises for the sale, &c., of wines, beers or liquors—*Held,* that the time limitation applies to all the restrictions, and is not confined to two of them only, and that all became inoperative after September 1st, 1903.

---

*Mr. Joseph Anderson, Sr.,* for the complainant.

· *Mr. Robert Carey,* for the defendant Kathryn Muller.

· *Mr. Joseph F. Farmer,* for the defendant Joseph W. Griffin.

GRIFFIN, V. C.

The material facts in this case are as follows: On the 23d of November, 1897, one Darling conveyed to Spangenberg and wife, the immediate grantors of the defendant Kathryn Muller, certain premises on West Side avenue, in Jersey City, by deed containing the following restrictions:

"That the party of the second part, their heirs and assigns, shall not at any time previous to September 1st, 1903, erect, nor cause, nor procure, permit or suffer to be erected upon the said premises any building other than a store or dwelling having a stone or brick foundation, and having at least two stories above such foundation, which building shall not be used for any other purpose than as a store or dwelling within the time limited; that no building shall be erected nearer than five feet to the street line of West Side avenue. No two-story clothes poles shall be erected on the said property.

It is expressly agreed that no wines, beers nor liquors of any kind shall be sold or manufactured upon the said premises."

Afterwards, by deed dated the 1st of December, 1898, Darling conveyed to the complainant lands on Duncan avenue, about twenty-five feet west of the rear line of the Spangenberg lot, which deed contained the following restrictions:

"That the party of the second part, his heirs or assigns shall not at any time previous to September 1st, 1903, erect, or cause or procure, permit or suffer to be erected upon the said premises, any building other than a store or dwelling having a stone or brick foundation, and having at least two stories above such foundation, which building shall not be used for any other purpose than as a store or dwelling, within the time above limited. That no dwelling shall be erected nearer than ten (10) feet to the street line. It is, however, understood and agreed that stables and barns may be erected upon the rear half of the said premises, which buildings shall, however, be used only as stables and barns, and shall be kept clean and free from nuisance.

It is expressly agreed, that no wines, beers nor liquors of any kind shall be sold or manufactured upon said premises.

No two-story clothes poles shall be erected on the said premises."

This deed was offered in evidence at the hearing on the order to show cause by consent.

Mrs. Muller leased the premises which she purchased from Spangenberg to Griffin, who had a license to sell liquor at another place transferred by the mayor and aldermen of Jersey City to permit the sale of liquor on said premises, and Griffin was proceeding to fit up the premises for the sale of liquors when the complainant filed his bill to restrain the defendants from leasing or using, or permitting to be used, the said premises, 771 West Side avenue, in Jersey City, for the sale or manufacture of wines, beers or liquors, &c. Upon filing said bill an order to show cause was granted, which included a restraint against the defendants selling or manufacturing wines, beers or liquors of any kind on the premises.

A comparison of both sets of restrictions shows that the third restriction in the deed to the complainant, against the sale of liquors, is the fourth restriction in the deed to Spangenberg; and the third restriction in the deed to Spangenberg is the fourth restriction in the deed to the complainant. Both restrictions, however, are substantially the same.

The defendants contend that all the restrictions contained in said deed expired on September 1st, 1903; whereas, the complainant contends that there are practically four separate and independent restrictions, all disjoined, the time limitation applying only to the first, namely, as to the style of building to be erected on the premises, which restriction became inoperative on and after September 1st, 1913; the second, which prohibits the erection of a building within a certain distance of the street line; the third in the complainant's deed, and the fourth in the Spangenberg deed, directed against the sale and manufacture of liquors; and the fourth in the complainant's deed, and the third in the Spangenberg deed, which regulates the height of the clothes poles which might be erected. And he must so contend; because if the time limitation is annexed to any one of the subsequent restrictions, it must necessarily apply to all, for the reason that there is nothing in the instrument which indicates that the framer of the restrictions intended that there should be any distinction made between the second, third and fourth restrictions as to the period of their existence. It is, therefore, necessary to examine into the character of the restrictions to de-

termine if the second, third or fourth restrictions, or either of them, are so related to the first that the restrictions would lack utility after the first became inoperative.

In dealing with the "third and fourth restrictions," for the sake of brevity, I will refer to the fourth restriction in the Spangenberg deed as being the "third restriction," and to the third restriction in the Spangenebrg deed as being the "fourth restriction," thus making the restrictions conform in order of sequence in the complainant's deed.

The first, second and fourth restrictions have to do with the building; the first is as to the style of the building to be erected prior to September 1st, 1903; the second is referable to the location where the building mentioned in the first restriction may be erected; the fourth relates to the height of the clothes poles to be used in connection with the building mentioned. This must, of necessity, be so, because after the 1st of September, 1903, the owner of the premises was not limited to the erection of a store or dwelling; he might erect a factory building extending the full width of the lot; he might erect telephone or telegraph poles to any height on the lot. It seems unreasonable to say that after the first restriction had expired the draughtsman intended that the second and fourth restrictions as to the building line and the clothes poles should stand, when, at the same time, the owner might cover the whole lot with any character of building without restriction. If the second and fourth restrictions are so tied to the first that they also ceased to be operative after September 1st, 1903, then, to my mind, a plain reading of the four restrictions indicates that all four were to expire on September 1st, 1903. The complainant says that the object of the restrictions was to create a neighborhood plan for residence purposes. I am satisfied that this is true; but of what value would such a plan be after the 1st of September, 1903, if any character of lawful building which the owner might see fit to construct could be erected upon the land. The owner might erect factories and other buildings which might be perfectly lawful and yet tend largely to depreciate the value of the surrounding property which had been developed on the neighborhood plan and to destroy it for residential purposes.

If the framer of the restrictions had intended that any of them should continue after the 1st day of September, 1903, he should have so provided by clear and unambiguous language. This he has not done. On the other hand, taking the scope and purpose of the restrictions, it seems to be clear that they were all to endure until September 1st, 1903. If this interpretation is doubtful, then the restrictions are ambiguous. In either event, the result reached must be the same, namely, that the complainant is not entitled to an injunction. *Fortescue* v. *Carroll* (*Court of Errors and Appeals, 1909*), *76 N. J. Eq. 583, 586.*

I will advise an order discharging the order to show cause.