Linda Irene HILLMAN,
Appellant (Defendant),

v.

Roy Ellis RAYMOND,
Appellee (Plaintiff).

No. 86–208.

Supreme Court of Wyoming.

March 4, 1987.

Rehearing Denied April 21, 1987.

Hunter Patrick and Denice E. Moewes, Student Intern of Patrick & Kitchen, Powell, for appellant.

Stephen L. Simonton and C. Bradley Smith, II of Simonton & Simonton, Cody, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Chief Justice.

This is an appeal from the district court's order finding appellee Roy Ellis Raymond not in contempt of the terms of a settlement agreement entered into with his former wife, appellant Linda Irene Hillman. The trial court found that appellee was no longer obligated to provide appellant with a new car each year under the settlement agreement.

Appellant raises the following issues on appeal:

"A. Can [appellee], by his own voluntary actions, cause a condition subsequent to occur, thereby discharging his duties under Paragraph 9 of the Property Settlement Agreement?

"B. Was it error for the Court to construe the condition loosely instead of strictly, thereby allowing [appellee] to be released from Paragraph 9 of the Property Settlement Agreement?

"C. Was it error for the trial judge to put the burden of proof on the [appellant]?"

We will reverse.

The parties were divorced and a decree entered on October 6, 1976. Incorporated into the divorce decree was a settlement agreement entered into by the parties on September 15, 1976. At issue in this case

is Paragraph 9 of the settlement agreement which reads:

"Roy [appellee] agrees to provide Linda [appellant] with adequate transportation generally being a new car each year for as long as Roy continues in the automobile business. * * * "

While married, the parties were joint owners of two automobile dealerships, one located in Powell, Wyoming, and the other located in Cody, Wyoming. Pursuant to the settlement agreement, appellee executed a promissory note agreeing to pay appellant $900 per month as partial payment of the joint interest held by appellant in the dealerships. Additionally, appellee agreed to provide appellant with a new car each year "for as long as Roy [appellee] continues in the automobile business."

The evidence indicated that on August 19, 1980, appellee sold the Powell dealership, and on August 21, 1980, appellee sold the Cody dealership. On September 9, 1980, appellee entered into an "Exchange Agreement" with William A. Workman and his wife Melva Workman, whereby the Workmans agreed to exchange all stock owned by them in an Idaho dealership for a deed to the real property held by appellee in Powell. The agreement further provided that the closing of the transfer of stock would take place ten days after approval was given by Ford Motor Company. Appellee testified he did not actually acquire stock in the Idaho dealership until December 4, 1980.

The trial court held that appellee was not engaged in the automobile business for those three and one-half months from the time he sold the Powell dealership on August 21, 1980 until December 4, 1980, when he actually acquired stock in the Idaho dealership. Consequently, the trial court held that appellee's obligation to provide appellant with a new car each year under the settlement agreement ceased when appellee sold the Wyoming dealerships.

■ We will consider appellant's issues together. In her first issue, appellant asks whether appellee can voluntarily cause a condition subsequent to occur thereby discharging his (appellee's) obligation under the settlement agreement to supply appellant with a new car each year. In appellant's second issue, she asks whether the trial court erred in construing paragraph 9 loosely instead of strictly, thus allowing appellee to be released from his obligation.

"A condition subsequent is any fact the existence or occurrence of which, by agreement of the parties, operates to discharge a duty of performance after it has become absolute. * * * " Calamari & Perillo, The Law of Contracts, § 11–5, p. 385 (1977).

In *Kindler v. Anderson,* Wyo., 433 P.2d 268, 270–271 (1967), we stated:

"Conditions subsequent are not favored in the law and are to be strictly construed. *J.M. Carey & Brother v. City of Casper,* 66 Wyo. 437, 213 P.2d 263, 268 [1950]. Of course, conditions, like any other provision of a contract, are to be interpreted as the parties must have understood the conditions at the time. The true intention of the parties will control and that is to be ascertained from the language used in the writing as a whole, looking if necessary at the situation of the parties, the subject matter, and the purpose to be served. *Pacific-Wyoming Oil Co. v. Carter Oil Co.,* 31 Wyo. 314, 226 P. 193, 197, rehearing denied 31 Wyo. 452, 228 P. 284."

See also, *Stockton v. Sowerwine,* Wyo., 690 P.2d 1202 (1984). However, we think a more accurate assessment of the issue involved here is simply whether the trial court erred in finding appellee was no longer obligated to supply appellant with a new car annually since the court found that appellee had not continued in the automobile business.

The language of the contractual provision at issue here was that appellee agreed to provide appellant with a new car each year " * * * for as long as [appellee] continues in the automobile business." At the time the agreement was made, appellee had two dealerships in Cody and Powell. As noted earlier, appellee sold the dealerships on August 19 and 21, 1980. Some nineteen

days later, on September 9, 1980, appellee entered into the exchange agreement to obtain stock in the Idaho dealership. While it is true that appellee did not actually obtain any stock in the Idaho dealership until December 4, 1980, he entered into the agreement only 19 days after selling the Cody dealership.

We are unable to see how appellee discontinued being in the automobile business for purposes of the settlement agreement when he sold the Cody dealership and entered into an agreement to obtain another dealership within 19 days. Furthermore, appellee testified that before entering into the exchange agreement of September 9, 1980, he and a Ford Motor Company representative went to Idaho to look at the dealership in July, 1980. Appellee also examined the financial statements before signing the agreement of September 9, 1980. It is also noted that appellee looked at other dealerships with the prospect of possible purchase in 1978. Therefore, we are unable to determine that appellee discontinued his involvement in the automobile business, thus entitling him to terminate his obligation to provide appellant with a new car each year.

█ If the language of a contract is clear, we need look no further than the four corners of the contract to determine the intent of the parties. *Holst v. Guynn,* Wyo., 696 P.2d 632 (1985); and *Rouse v. Munroe,* Wyo., 658 P.2d 74 (1983). It seems clear that the parties intended that appellee give appellant a new car so long as he continued in the automobile business. If the parties had intended to make the contractual provision contingent solely upon appellee's continuing in the automobile business in Cody and Powell, they could have expressly stated so as they did in other provisions of the settlement agreement. We are unable to conclude that appellee discontinued his automobile business merely by disposing of one dealership and acquiring another.

Our holding makes it unnecessary to address appellant's last issue regarding burden of proof.

Reversed.

CARDINE, J., filed a dissenting opinion.

CARDINE, Justice, dissenting.

I dissent.

I would have affirmed the district court in its decision in the above case. The opinion of the court acknowledges that appellee was not in the "automobile business" for 19 days but concludes that, although not in business, he did not cease doing business. I cannot help but wonder what period of time would be sufficient to hold that he had ceased doing business. Would it be six months, a year, or ten years? At least it is agreed that appellant ceased being in the "automobile business" in Cody and Powell, Wyoming, which were the automobile businesses within the contemplation of the parties when they made their agreement.

For me the real question was the intent of the parties at the time the agreement was made. The trial court heard the testimony, observed the witnesses, evaluated their credibility, and resolved this question in favor of appellee. For this reason, I would affirm.