**BROOKSIDE COMMUNITY, INC.,**
**a Delaware corporation,**
**Plaintiff,**

v.

**Harvey F. WILLIAMS, Defendant.**

Court of Chancery of Delaware,
New Castle.

April 24, 1972.

Karl J. Parrish, Wilmington, for plaintiff.

Thomas Herlihy, Jr., Wilmington, for defendant.

DUFFY, Chancellor.

Brookside Community, Inc. (BCI), plaintiff, seeks a mandatory injunction compelling Harvey F. Williams, defendant, to remove a fence which allegedly violates restrictive covenants contained in his and all other deeds to properties in Brookside. This is the decision after final hearing.

### A.

BCI is a Delaware corporation organized about 1953 to develop and administer the community known as Brookside which consists of 1,345 houses with a population of about 8,500 persons. Plaintiff is now a "civic association" with a Deed Restriction Committee whose function is to enforce restrictive covenants in all Brookside deeds. The Committee, which consists entirely of volunteers who live in the community, has an established procedure in dealing with violations; in so doing, it has relied largely on persuasion and persistence. This is the first suit by BCI to enforce fencing or other restrictions of a similar character.

Defendant purchased a Brookside property in November 1967. In October 1969, with knowledge of the restrictions, he built a fence of wood, iron and wire enclosing the front yard. Plaintiff asked him to remove it, he refused to do so, attempts to negotiate failed, this action followed.

### B.

■ I first consider plaintiff's status. Independent of its association character, BCI is a property owner in Brookside and as such is intended to be benefitted by the restrictive covenants; therefore it may maintain an action to enforce such covenants when a general plan of restriction is shown. Welshire, Inc. v. Harbison, Del. Supr., 33 Del.Ch. 199, 91 A.2d 404 (1952); Jackson v. Richards, 26 Del.Ch. 260, 27 A.2d 857 (1942). It is undisputed that there is such a plan here and defendant does not contest BCI's status as property owner. It follows that plaintiff has standing to sue.

Defendant's contentions, as I understand them, are these: First, construing the language of the restrictions against plaintiff, his fence does not in fact violate the covenant; second, by acquiescing in other violations plaintiff has either waived a right to enforce the covenant or is estopped from doing so.

### C.

I turn now to the pertinent language in the restrictions.

■ It is, of course, established law that restrictive covenants are construed in favor of a grantee and against the grantor or one who enforces in his place. Andrews v. McCafferty, Del.Ch., 275 A.2d 571 (1971); Nash v. Connell, 34 Del.Ch. 20, 99 A.2d 242 (1953); Gibson v. Main, 14 Del. Ch. 112, 122 A. 188, aff'd 14, 129 A. 259 (1925). And it is equally well settled that common and ordinary words used in a restrictive covenant are to be given their ordinary meaning, when possible. Andrews v. McCafferty, supra; Cruciano v. Ceccarone, 36 Del.Ch. 485, 133 A.2d 911 (1957).

The covenant which plaintiff seeks to enforce, and which is included by reference in defendant's deed, states:

"#11. . . . no fence of any kind shall be erected or maintained on any portion of the said premises along the front lot line. No fence of any kind shall be erected or maintained in or along the rear of said premises or from the front

building line to the rear lot line or from the side of the building to the side lot line except a hedge fence, picket fence, lattice fence or wire fence. All fences of any kind herein permitted shall not be more than four (4) feet from the ground. This paragraph shall not be construed to prevent or prohibit the erection of a permanent wall commonly termed 'retaining wall' where the same may be required."

The restriction applies to a "fence". As commonly used, that terms means,

"an enclosure about a field or other space or about any object; esp., an enclosing barrier, as a structure of wood, stone, or iron, intended to prevent straying from within or intrusion." Webster's New International Dictionary (2 ed. 1944).

The Random House Dictionary gives this definition:

"A barrier enclosing or bordering a field, yard, etc. usually made of posts and wire or wood, used to prevent entrance, to confine or to mark a boundary."

And the venerable Oxford, A New English Dictionary (1901) describes a fence as an enclosure or barrier along a boundary or any place which it is desired to defend from intruders.

■ A fence is thus not merely any barrier, but rather one which encloses a space or an object. It is, of course, impossible to state as an abstract fact the length or height to which a barrier must go in order to be, or to become, a fence. That depends on the space to be enclosed. But the idea of structure or barrier for "enclosure" purposes is common to all of these definitions.

Turning to Restriction #11, it expressly prohibits a fence ". . . of any kind . . . along the front lot line." But a certain type of fence is permitted ". . . in or along the rear of said premises or from the front building line to the rear lot line or from the side of the building to the side lot line . . . ."

■ The covenant does not expressly restrict the erection of a fence running from the front building line to the front lot line. However, it was clearly the intention of the grantor to restrict all fences which may be erected in Brookside. I say this because it would not be reasonable to interpret the restriction as (a) disallowing all fences along the front lot line, (b) permitting only certain limited kinds of fences (hedge, picket, etc.) from the front building line to the rear of the lot, while, (c) at the same time allowing any kind of fence (an eight-foot stone barrier, for example) to be placed from the front building line to the front lot line. Having in mind that a fence is an enclosing barrier (as defined above), I conclude that the part of the covenant which prohibits a fence "along the front lot line" must be construed to prohibit any fence from the front building line to the front lot line.

■ The fence on defendant's property is a four-foot-high structure of wood and wire (see PX8) which runs along his front lot line and from that line to the front building line and, in so doing, it encloses substantially all of his front yard. It violates that part of Restriction #11 which prohibits all such fences and, absent waiver or estoppel, plaintiff is entitled to the relief it seeks.

D.

■ Defendant testified about and produced photographs of many alleged "fences" which have been erected on other lots in Brookside. And many of these were identified by counsel during a view of the community. The properties are many, the circumstances are varied and it is impractical to discuss them individually. The short of it is that I do not regard the following as "fences" within the meaning of Restriction #11: ornamental bushes (whether single or in combination), a "divider" (of any material) which separates lawn from walk or flower bed, a "screen" or divided (of any material) used for decorative or ornamental purposes in conjunction with a "patio".

Since substantially all of the "fences" to which defendant directed his evidence were in one or more of these categories, I find no merit in his contention that their continuing existence amounts to a waiver by plaintiff of its right to enforce the restrictive covenant on front yard fences.

■ There is an additional reason why defendant's argument is without merit to the extent that it is based upon alleged violations in rear or side yards. Any such "fences" would be a violation of that part of Restriction #11 which permits certain restricted kinds of fences. Assuming, without deciding, that the failure to enforce the covenant against such fences constitutes a waiver of the right to enforce it as to such fences, that is not a waiver of a right to enforce the *entire* covenant. On the contrary, abandonment or acquiescence in the violation of certain restrictions does not amount to abandonment of another separate and distinct restriction material and beneficial to the owners of lots affected thereby. Andrews v. McCafferty, supra; Rogers v. Zwolak, 12 Del.Ch. 200 110 A. 674 (1920); Thompson on Real Property, § 3173. The part of the covenant prohibiting the erection of fences in front of the front building line of lots in Brookside is separate and distinct from the restriction on the types of fences that may be used elsewhere. And I emphasize that defendant has the only front yard fence in Brookside.

\* \* \*

Plaintiff seeks to enforce only that part of the restrictive covenant which prohibits a fence in front of the building line. Defendant has introduced no evidence showing waiver of this covenant. It follows that plaintiff is entitled to a mandatory injunction compelling defendant to remove so much of the fence as extends beyond his front building line.\*

Order on notice.

---

\* Accordingly, defendant's motion to dismiss the complaint, made at the close of plaintiff's case, will be denied.